IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                       No. CR 08-1541 MV

FRANCISCO BURCIAGA,

       Defendant.

## OPINION

**THIS MATTER** came before the Court on November 17, 2010, during the jury trial of Defendant Francisco Burciaga.  The Court declared a mistrial and issues this Opinion to further explain its reasoning.

## BACKGROUND

Mr. Burciaga is charged with Possession with Intent to Distribute 1000 grams and More of a Substance Containing a Detectable Amount of Heroin.  Trial in this matter commenced on November 15, 2010.  During its case-in-chief, the government presented substantial evidence that would allow a jury to conclude beyond a reasonable doubt that Mr. Burciaga physically possessed more than 1000 grams of heroin.

After the close of the government's case, Mr. Burciaga testified in his own defense.  Over the course of direct examination, Mr. Burciaga presented a defense theory that he had no knowledge of the heroin (nor the hidden compartment) that law enforcement found in his vehicle.  Because this offense requires the jury to find knowing or intentional possession beyond a reasonable doubt, his theory was that his lack of knowledge of the heroin demonstrated that he was not guilty.  In an apparent effort to demonstrate Mr. Burciaga's innocence to the jury,

defense counsel Penni Adrian had the following exchange with her client:

> Q: [H]ave you ever been convicted of a crime?
> A: Yes.
> Q: Would you tell us what you've been convicted of?
> A: Possession of marijuana [in 1991] . . . [and] delivery [of marijuana in 1995].
> . . .
> Q: Okay.  Did you go to trial on those cases?
> A: No ma'am.
> Q: What did you do?
> A: I pled.
> Q: And why did you plead?
> A: Because I was guilty.

Tr. of Proceedings, Direct Exam. of Francisco Burciaga at 3-4.[1]  Direct examination concluded

as follows:

> Q: Have you ever considered accepting a plea and pleading guilty in this case?
> A: No.
> Q: Why is that?
> A: Because I'm not guilty.

*Id*. at 33.

On cross-examination, the government asked Mr. Burciaga about his contention that he

had never considered pleading guilty in this case.  When Mr. Burciaga affirmed this portion of

his testimony, AUSA Jon Stanford attempted to impeach him by asking, "Why is it your attorney

came to me with a proposed plea in this case last spring?" Tr. of Proceedings, Cross Exam. of

Francisco Burciaga at 12.  The defense objected, and the Court excused the jury.

The defense did not immediately request a mistrial, but did request one before the

conclusion of the proceedings.  When the jury was excused, the Court reprimanded Mr. Stanford

and warned him that he had "come awfully close to a mistrial."  *Id*. at 17.  Mr. Stanford

---

[1]This order cites to the court reporter's unofficial transcript.  All page numbers are subject to change on the final, official transcript.

2

explained that Ms. Adrian had sent him an email in which she said, "If you offered five years, he'd take it in a heartbeat." *Id*. at 14. He further explained: "I have a good faith basis for asking [the question] because I personally was a party to the conversation . . . . I'm asking it because it's a credibility issue. He lied yesterday. He said he never wanted to take a plea." *Id*.

After a discussion with counsel, the Court called a recess so that it could conduct research and "decide whether to grant a mistrial." *Id*. at 20. The Court reviewed the relevant law, considered possible alternatives to declaring a mistrial, and heard arguments from the government as well as Mr. Burciaga about whether or not a mistrial was warranted. The Court concluded that no curative instruction could repair the error that the government committed by asking this question of Mr. Burciaga, and accordingly declared a mistrial.

## DISCUSSION

### I.      Inadmissibility of Plea Offers and Related Statements

The Federal Rules of Evidence provide that "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty" is inadmissible against a criminal defendant. FED. R. EVID. 410. *See also* FED. R. CRIM. P. 11(f) ("The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410."). This Rule and the related Rule of Criminal Procedure were promulgated in part because "[e]ffective criminal law administration in many localities would hardly be possible if a large proportion of the charges were not disposed by such compromises." FED. R. EVID. 410, Advisory Committee's Note (1972). Equally importantly, these Rules are in place so as not to "discourage defendants from being completely candid and open during plea negotiations," and "to permit the unrestrained candor which produces effective

plea discussions."  FED. R. CRIM. P. 11, Advisory Committee's Note (1979).

In this case, Mr. Stanford's question to Mr. Burciaga was in clear violation of the Federal Rules of Evidence and Criminal Procedure because it was *precisely* "evidence of . . . any statement made in the course of plea discussions."  The government's argument that its questions are not "evidence" and thus are not subject to the Rules of Evidence merits little discussion; the government cannot escape the protections these Rules afford criminal defendants by simply introducing otherwise inadmissible evidence in the form of a question to a witness.  Moreover, the government's argument that Mr. Stanford asked the question "in good faith" is misplaced. The Court first notes that approaching the bench would be the more responsible route for a prosecutor to take before asking a question that clearly violates the plain language of the Federal Rules of Evidence, and such a course of action would be more consistent with a good faith effort to honor the rights of a criminal defendant.  Moreover, a prosecutor's alleged good faith basis for any given action at trial does not resolve the ultimate question of whether the defendant's right to a fair trial has been violated.

Most importantly, the government is incorrect in its assertion that its question was proper to impeach Mr. Burciaga's credibility.  In *United States v. Lawson*, 683 F.2d 688 (2d Cir 1982), the Second Circuit thoroughly analyzed whether or not Rule 410 encompasses an impeachment exception to its prohibition on the introduction of statements made during plea discussions. After reviewing the legislative history to Rule 410, which the *Lawson* court found to be "unusually clear," *id*. at 692, the court held that Congress explicitly intended "to preclude use of statements made in plea negotiations for impeachment purposes."  *Id*. at 693.  The court explained that Congress had explicitly considered – and rejected – the following proposed

amendment to the Rule:

> This rule should not apply to the introduction of voluntary and reliable statements
> made in court on the record in connection with (an offer to plead guilty) where
> offered for impeachment purposes . . . .

*Id*. at 692 (quoting  S. REP. NO. 93-1277 (1974)).  In *United States v. Acosta-Ballardo*, 8 F.3d

1532, 1535 (10th Cir. 1993), the Tenth Circuit cited *Lawson* with approval, agreeing that the

legislative history to Rule 410 revealed "Congress' explicit intention to preclude use of

statements made in plea negotiations for impeachment purposes."  Even if the proposed

amendment providing for an impeachment exception had been adopted, it would have applied

only to statements made in court on the record, which the statement at issue here was not.

Moreover, the government was attempting to impeach *the defendant* with a statement

made by *his counsel* in an email to Mr. Stanford.  After the Court excused the jury, Ms. Adrian

stated: "Mr. Burciaga was never a party to [my discussions with Mr. Stanford].  I was exploring

possibilities, and I believed that if I offered him five years, since he'd already done two-and-a-

half, that he would take it . . . .  But Mr. Burciaga's position is exactly what it has been from the

beginning."  Tr. of Proceedings, Cross Exam. of Francisco Burciaga at 18-19.  Ms. Adrian's

attempt to secure a favorable plea offer for Mr. Burciaga is not necessarily inconsistent with Mr.

Burciaga's statement on the witness stand that *he* never "considered" pleading guilty in this case,

so even if Rule 410 provided for an impeachment exception, it is unclear that such an exception

would apply.  For all of these reasons, the government's conduct in this case was highly

inappropriate, and the Court hopes that in the future Mr. Stanford will approach the bench before

treading on such shaky ground in the jury's presence.[2]

The only authority advanced by the government to support Mr. Stanford's asserted "good faith basis" for asking his question does not support its assertion that the question was proper for impeachment purposes.  The government argued that *United States v. Crockett*, 435 F.3d 1305 (10th Cir. 2006) supported the introduction of Ms. Adrian's statements made during plea discussions.  The government pointed to *Crockett's* holding that "[W]ide latitude is permitted in cross-examination of an accused when a prosecutor seeks to impugn credibility."  *Id*. at 1312 (quotation omitted).  Mr. Stanford argued that his question was proper under *Crockett's* holding that a defendant "subjects him to cross-examination on all relevant facts" when he testifies in his case-in-chief.  *Id*. at 1313 (quotation omitted).  However, *Crockett* is entirely distinguishable. *Crockett* did not involve the introduction of statement made in connection with plea negotiations, so the strong policy concerns described above were not at issue.  Moreover, at issue in *Crockett* was the government's introduction of evidence that the defendant had failed to file his taxes – a specific act of conduct in violation of Rule 404(b) – after the defendant stated on direct examination that he had never cheated on his taxes.  *Id*.  Unlike Mr. Burciaga's case, it was plain from the *Crockett* defendant's testimony that he had been dishonest during direct examination; his testimony was inconsistent with conduct in which *he himself* had engaged.  In such a situation, the government certainly has "wide latitude" to impeach a defendant with otherwise inadmissible bad act evidence.  In contrast to *Crockett*, (1) it is doubtful that Mr. Burciaga was

---

[2]The Court notes that direct examination of Mr. Burciaga concluded at the end of the day on November 16th, and cross-examination began the following morning.  Mr. Stanford clearly had time to reflect about the propriety of introducing Ms. Adrian's statement and had ample opportunity to ask the Court outside the jury's presence whether or not such a question would be permissible.

being dishonest in his testimony; (2) the government attempted to impeach Mr. Burciaga's alleged "lie" with an allegedly inconsistent statement that *another person* had made; and (3) the government did so in violation of a Rule of Evidence not at issue in *Crockett*, a Rule that does not have an impeachment exception.  *See Lawson*, 683 F.2d at 692-93.

After a recess, the government also argued that *United States v. Mezzanatto*, 513 U.S. 196 (1995) demonstrated that its question of Mr. Burciaga was proper to impeach his credibility. In *Mezzanatto*, the Supreme Court held that a defendant's explicit waiver of Rule 410 was valid and enforceable where the defendant had conferred with his counsel as to the waiver.  *Id*. at 210. The government argued that Mr. Burciaga's "lie" on the witness stand about never having considered pleading guilty in this case functioned as an implicit waiver of the protections of Rule 410.  The facts of this case do not support the government's assertion.  There is no evidence that Ms. Adrian's statement in her email to Mr. Stanford was made with Mr. Burciaga's consent or knowledge; therefore, Mr. Burciaga has in no way implicitly waived the protection of Rule 410 by testifying in a manner that is inconsistent with a statement that he himself previously made.

The government also advanced *United States v. Doran*, 564 F.2d 1176 (5th Cir. 1976), where the defendant testified on direct examination that he had refused a plea offer from the government because he was innocent.  *Id*. at 1177.  On cross-examination, the government asked the defendant about a counteroffer he had made to the government.  *Id*.  The court overruled the defendant's objection, and the Fifth Circuit affirmed, holding that "where the injection of allegedly inadmissible evidence is attributable to the action of the defense, its introduction does not constitute reversible error."  *Id*.  *Doran* is distinguishable because, unlike here, the defendant in *Doran* was present during plea negotiations and his counsel proposed a plea offer with his

consent.  Moreover, the defendant in *Doran* expressly introduced inadmissible evidence of plea negotiations, so the government had substantial reason to believe that the doctrine of invited error applied.  Here, the Court cannot find that Mr. Burciaga *invited* any error, because there is no evidence that he himself ever considered a plea offer.

Based on the foregoing analysis, the Court found that the government's question to Mr. Burciaga about his counsel's "proposed plea"[3] amounted to a clear violation of Rule 410 of the Federal Rules of Evidence and Rule 11(e) of the Federal Rules of Criminal Procedure.

## II.    Mistrial

The fact that Mr. Stanford's question amounted to a violation of the Rules of Evidence and the Rules of Criminal Procedure does not conclude the Court's analysis.  A mistrial is not warranted for every prosecutorial violation; indeed, a court should proceed with "the greatest caution" before ordering a mistrial.  *United States v. Perez*, 22 U.S. 579, 580 (1824).  However, here, after careful consideration, the Court found that no curative instruction would suffice to repair the prejudice this question caused.

A mistrial is warranted in a criminal case when a situation arises at trial "so adversely affect[ing] the fundamental fairness of the proceeding that a declaration of mistrial becomes necessary."  25 MOORE'S FEDERAL PRACTICE § 626.3.02 (Matthew Bender 3d ed.).  A "typical

---

[3] The Court notes that Ms. Adrian's email as quoted by Mr. Stanford was not itself a "plea offer" as Mr. Stanford's question would have suggested.  Her statement that her client would accept a particular offer from the government was an invitation for an offer.  Had the government responded by offering such a deal to Mr. Burciaga, he would have had the opportunity to reject it.  This observation further supports Ms. Adrian's assertion that she did not have her client's permission to propose such an agreement, and further undermines Mr. Stanford's position that he had a good faith belief that Mr. Burciaga was lying on direct examination.

example" of a situation warranting a mistrial is one where a "prejudicial statement[] by counsel . . . cannot be corrected by a jury instruction." *Id.* A court has the "authority to discharge a jury from giving any verdict, whenever, in [the court's] opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Perez*, 22 U.S. at 580.

As summarized above, Mr. Burciaga testified that he has sustained two prior drug convictions, and he pled guilty in those cases because he was guilty. In contrast, here he testified that he did not consider pleading guilty because he is not guilty. With Mr. Stanford's question, the government introduced what it termed a previous plea offer to the jury, a plea offer that it appears Mr. Burciaga was unaware of. This question on behalf of Mr. Stanford undeniably tainted the jury's opinion of Mr. Burciaga's credibility and his assertion that he is innocent in this case. Even if the Court were to have offered a curative instruction, the jury would not be able to avoid the belief that Mr. Burciaga's lawyer – the person with whom he has discussed his case in confidence, and the person whose job it is to zealously advocate for his interests – spoke for him when she made the purported plea offer. Given the substantial evidence of the presence of heroin in Mr. Burciaga's vehicle, Mr. Stanford's improper question eliminated the only ground the jury would have had to find Mr. Burciaga not guilty. Accordingly, the Court concluded that Mr. Stanford's question resulted in "manifest necessity," *See Perez*, 22 U.S. at 580, and a mistrial was warranted.

## CONCLUSION

The Court sets forth the foregoing analysis so as to fully explain the bases for its declaration of a mistrial on November 17, 2010.

9

Dated: the 23rd day of November, 2010.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

*Attorneys for Plaintiff:*
Jon Stanford
Paige Messec

*Attorney for Defendant:*
D. Penni Adrian