IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                    No. CR 08-1541- MV

FRANCISCO BURCIAGA,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Francisco Burciaga's Motion to Suppress Fruits of Stop Without Objectively Reasonable Suspicion [Doc. 93], filed January 24, 2011. The Court has considered the Motion, the Government's Response [Doc. 103], Defendant's Reply [Doc. 106], the evidence and arguments presented at the March 17, 2011 hearing, the relevant law, and being otherwise fully informed, **FINDS** that the Motion should be **GRANTED** for the reasons stated herein.

### PROCEDURAL HISTORY

On July 8, 2008, Defendant was indicted for possession of 1000 grams and more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). After numerous motions to continue filed on Defendant's behalf, trial commenced on November 15, 2010. On November 17, 2010, the Court granted a mistrial. The basis for the mistrial is set forth in detail in the Court's Opinion issued on November 23, 2010 [Doc. 77].

At Defendant's original trial, New Mexico Transportation Department Officer John Valdez offered testimony regarding the traffic stop which ultimately led to the discovery of heroin in Defendant's vehicle. Following the mistrial, Defendant filed the instant Motion to

Suppress, wherein he argues that Officer Valdez's stop was impermissible under the Fourth Amendment.  He states that it was not until hearing Officer Valdez's testimony at the November trial that Defendant learned of the officer's precise basis for conducting the traffic stop, a basis Defendant argues renders the stop unreasonable.

The Court conducted a hearing on Defendant's Motion on March 17, 2011.  Officer Valdez was the only witness to testify at the hearing.

## WAIVER

In its Response to Defendant's Motion, the Government argues that he has waived any defense he may have under the Fourth Amendment.  Although the Court ruled at the evidentiary hearing that it would decline to dismiss Defendant's Motion on grounds of waiver, the Court now proceeds to explain this ruling.

Federal Rule of Criminal Procedure 12 provides that a motion to suppress must be raised "before trial."  FED. R. CRIM. P. 12(b)(3)(C).  This rule further provides: "A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides.  For good cause, the court may grant relief from the waiver."  FED. R. CRIM. P. 12(e).  The Government notes that the motions deadline in this case was August 7, 2008, and the Court did not extend that deadline or set a new deadline after the mistrial.  The Government further argues that Defendant has not demonstrated "good cause" to be excused from the previously set deadline.

The Court finds that the waiver rule is inapplicable here because a mistrial nullifies the deadlines pertaining to the first trial.  *United States v. Mauskar*, 557 F.3d 219, 225 (5th Cir. 2009).  In *Mauskar*, the defendant's first trial ended in mistrial and he filed a motion to dismiss the indictment two weeks prior to the second trial.  *Id*.  The district court dismissed the motion as

untimely under Rule 12, and the Government argued on appeal that the dismissal was proper.

The Fifth Circuit held as follows:

> [Rule 12 does not] address the question raised by the government here, which is whether a defendant who fails to challenge a duplicitous indictment before a trial ending in a mistrial is barred from raising the challenge before a subsequent trial on the same indictment.  No controlling authority exists, but the long-established principle that "[t]he declaration of a mistrial renders nugatory all trial proceedings with the same result as if there had been no trial at all" militates strongly against the government's position.  *See United States v. Pappas*, 445 F.2d 1194, 1201 (3d Cir. 1971) (internal quotation marks and citations omitted); *see also United States v. Groth*, 682 F.2d 578, 580 (6th Cir. 1982) ("We agree with the trial judge . . . that the prosecution is not bound by its first waiver.  The waiver referred to the earlier trial . . . .  Once a mistrial was declared each party was free to assert or waive his rights.").  We apply this principle and hold that Mauskar's motion to dismiss the indictment was timely filed.

*Id*.  The Fifth Circuit's reasoning is persuasive.  As the Government has pointed to no authority that might contradict the Fifth Circuit's conclusion, the Court finds that Defendant has not waived his Rule 12 defenses, and proceeds to evaluate the merits of the Motion to Suppress.

## FACTUAL BACKGROUND

On June 24, 2008, at roughly 5:00 a.m., Defendant was driving northbound on Interstate 25 near Raton, New Mexico.  New Mexico Transportation Department Officer John Valdez was patrolling the area, and he observed that traffic was light.  However, somewhere in Defendant's general vicinity was a semi truck.  In addition, a maintenance truck the officer termed a "water truck" was pulled over on the shoulder of the highway, driving so slowly that it initially appeared not to be moving.  Aside from those two vehicles, Defendant's vehicle and Officer Valdez's vehicle were the only ones present in that general area of the highway.

Prior to making any contact with Defendant, Officer Valdez noticed the water truck on the shoulder and became concerned that the truck was experiencing problems.  Officer Valdez slowed his vehicle and pulled over to the shoulder to conduct a welfare check on the water truck.

3

He engaged his emergency equipment, but soon thereafter saw that the water truck was indeed moving, albeit slowly, along the shoulder.  Officer Valdez determined that the water truck was not attempting to reenter the highway, and further concluded that it was not in trouble and did not need a welfare check.  After Officer Valdez engaged his emergency equipment, and before he reentered the highway, Defendant – whose vehicle was behind the officer – moved from the right lane to the left lane.  Officer Valdez could not recall exactly when Defendant engaged his turn signal, but "it appeared" to the officer that he did so less than 100 feet before moving from the right lane to the left lane.  3/17/11 Evid. Hr'g Tr. at 30.[1]

Officer Valdez reentered the highway from the shoulder into the right lane, and Defendant passed him.  Shortly after Officer Valdez reentered the highway, Defendant changed lanes into the right lane in front of the officer.  With respect to this lane change, Officer Valdez testified with certainty that Defendant engaged his turn signal simultaneously to the maneuver, rather than signaling ahead of time so as to alert drivers in the vicinity of his intent to change lanes.

Officer Valdez proceeded to engage his emergency equipment and conduct a traffic stop on Defendant's vehicle.  At the commencement of the traffic stop, Officer Valdez explained his reason for pulling over Defendant as follows: "[W]hen you signal . . . around to the next lane[,] . . . [y]ou got to give 100 feet worth of signal before you even change lanes.  You can't signal and change at the same time.  You know how you did in front of me, and then I think you did it behind me also[.]" Doc. 93, Ex. 4 at 2.  The citation itself lists the reason for the stop as a violation of Section 66-7-325(B) of the New Mexico Statutes, and states the reason for the stop

---

[1] This Memorandum Opinion and Order cites to the court reporter's unofficial transcript. All page citations are subject to chance on the official, edited version.

4

as: "Failure to signal properly.  Lane change signal/simultaneously."  Doc. 93, Ex. 2.  It appears from the transcript of the traffic stop that Defendant admitted to the violation: when Officer Valdez explained the reason for the stop, Defendant stated, "Actually, I do that . . ."  Doc. 93, Ex. 4 at 4.  However, the remainder of this statement is inaudible.  *See id*.  Defendant then elaborated on his statement, but portions of the explanation are inaudible: "(Inaudible) because when you guys pulled over . . . (inaudible) people and then you guys and I'm sorry."  *Id.*

For purposes of the instant Motion, it is sufficient to summarize the remainder of the traffic stop as follows: Officer Valdez wrote Defendant a traffic citation and proceeded to obtain his consent to search the vehicle, wherein he uncovered approximately seventeen kilograms of heroin.  Defendant moves to suppress the drug evidence, arguing that Officer Valdez's belief that Defendant's lane change(s) violated Section 66-7-325(B) of the New Mexico Statutes amounted to a mistake of law.  Accordingly, argues Defendant, the officer had no reasonable suspicion to conduct the traffic stop, rendering the stop unreasonable under the Fourth Amendment and rendering the drug evidence suppressible as fruit of the poisonous tree.

## APPLICABLE LAW

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. CONST. AMEND. IV.  A traffic stop is a seizure under the Fourth Amendment, and is only reasonable if the officer conducting the stop had reasonable suspicion that the driver violated a traffic law.  *United States v. Tibbetts*, 396 F.3d 1132, 1137 (10th Cir. 2005).  "[A]n officer's reasonable mistake of fact, as distinguished from a mistake of law, may support the probable cause or reasonable suspicion necessary to justify a traffic stop[.]"  *United States v. Valadez-Valadez*, 525 F.3d 987, 991 (10th Cir. 2008) (quotations, alterations and ellipses omitted).

5

However, the "failure to understand the law by the very person charged with enforcing it is not objectively reasonable." *Tibbets*, 396 F.3d at 1138 (emphasis removed). "The dispositive inquiry is whether state law provided the officer with an objectively justifiable basis for the stop." *Id*. at 991-92 (quotations, alterations and ellipses omitted).

Absent circumstances not present here, evidence uncovered during traffic stop not supported by reasonable suspicion may not be introduced in a subsequent criminal proceeding. *United States v. Calandra*, 414 U.S. 338, 347 (1974).  The Government bears the burden of proving that the traffic stop was reasonable.  *United States v. White*, 584 F.3d 935, 944-45 (10th Cir. 2009) (citing *United States v. Turner*, 553 F.3d 1337, 1344 (10th Cir. 2009)); *United States v. Chavez*, 534 F.3d 1338, 1343 (10th Cir. 2008) (citing *United States v. Herrera*, 444 F.3d 1238, 1242 (10th Cir. 2006)).

## DISCUSSION

In the instant case, the Government bears the burden of proving that Officer Valdez had the requisite reasonable suspicion to conduct the traffic stop.  *See*, *e.g.*, *White*, 584 F.3d at 944-46 (noting, in context of traffic stop, that Government bears burden of proving reasonableness of seizure and proceeding to evaluate whether officer had objectively reasonable suspicion to conduct traffic stop).  The Court must emphasize that the Government's burden is to establish the presence of reasonable suspicion; it need not establish that Defendant in fact committed a traffic violation.  *Tibbets*, 396 F.3d at 1137.

Defendant argues that the officer's misunderstanding of New Mexico law led him to pull over Defendant for conduct that was, in fact, entirely permissible.  If the Government fails to establish that Officer Valdez had an objectively reasonable suspicion that Defendant had committed a traffic violation, the drug evidence must be suppressed.

6

I.      **Relevant New Mexico Law**

Section 66-7-325 of the New Mexico Statutes provides, in pertinent part and with

emphasis added to highlight the controversial language, as follows:

> A.      *No person shall turn* a vehicle at an intersection . . . *or turn* a vehicle to enter
> a private road or driveway *or otherwise turn a vehicle from a direct course or move*
> *right or left upon a roadway* unless and until such movement can be made with
> reasonable safety. *No person shall so turn any vehicle without giving an appropriate*
> *signal* in the manner hereinafter provided *in the event any other traffic may be*
> *affected by such movement.*
>
> B.      A signal of intention to turn right or left *when required* shall be given
> continuously during not less than the last one hundred feet traveled by the vehicle
> before turning.

N.M. STAT. ANN. § 66-7-325(A)–(B).

This case presents two distinct issues with respect to interpretation of this statute.  First,

the Court must decide whether or not Defendant's lane changes were "turns" within the meaning

of Section 66-7-325(B).  If the Court resolves this question in the affirmative, it must then decide

whether, under the particular facts of this case, Officer Valdez had reasonable suspicion that any

other traffic "may [have been] affected by [Defendant's] movement" within the meaning of

Section 66-7-325(A).  If the Court determines that lane changes are not "turns," it must

determine whether or not Officer Valdez had reasonable suspicion that Defendant's movements

upon the highway were not "made with reasonable safety" pursuant to Section 66-7-325(A).


A.      **Whether "Turn" Includes Lane Changes**

The parties have not advanced any New Mexico case law examining whether the turn

signal statute's reference to "turn" also encompasses lane changes.  Therefore, this Court must

strive to determine how New Mexico courts would interpret the statute in similar circumstances.

*United States v. Tibbets*, 396 F.3d 1132, 1137-38 (10th Cir. 2005). New Mexico courts "have repeatedly observed that a statute's plain language is the most reliable indicator of legislative intent." *Stennis v. City of Santa Fe*, 244 P.3d 787, 790 (N.M. Ct. App. 2010) (citation omitted). The New Mexico Supreme Court has stated that "[t]he first guiding principle in statutory construction" requires courts to "look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *United Rentals Northwest, Inc. v. Yearout Mechanical, Inc.*, 237 P.3d 728, 732 (N.M. 2010) (quotations and alteration omitted).

Here, the "plain meaning" approach does not solve the inquiry, because certain aspects of the statute appear to be in slight conflict with each other. The wording of the statute suggests that "turning" is distinct from "moving left or right upon a roadway." *See* § 66-7-325(A) (listing four distinct maneuvers, the first three of which are different types of "turns," and the last of which is "mov[ing] right or left upon a roadway"). However, the statute's use of "shall so turn" indicates that this modifying phrase encompasses every type of "turn" previously listed. The Supreme Court has observed that a statutory "provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law[.]" *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 371 (1988) (citations omitted). The Court has additionally instructed that it is important to consider questions of statutory construction in light of the statute's purpose. *See*, *e.g.*, *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe R.R. Co.*, 516 U.S. 152, 157 (1996).

Given these principles, the Court concludes that if it is to give effect to the intent of the

8

New Mexico legislature, only one reading of the statute is plausible.  The general policy concerns behind requiring turn signals support a conclusion that "shall so turn" includes lane changes.  The New Mexico Motor Vehicle Division expressed these concerns in its driver's manual: "Generally other drivers expect you to keep doing what you are doing.  You must warn them when you are going to change direction or slow down.  This will give them time to react if needed, or at least not be surprised by what you do."  *Motor Vehicle Div., New Mexico Taxation & Revenue Dep't, New Mexico Driver Manual* 19 (2004).  The Motor Vehicle Division's instruction that drivers must warn others when they intend to change direction strongly suggests that the statute in question encompasses any directional change, including lane changes.

Moreover, the legislature's placement of "shall so turn" supports a conclusion that it intended lane changes to be included in the general category of "turns."  This is because the statute lists four distinct maneuvers one can make in a vehicle: turning at an intersection, turning to enter a private road or driveway, turning from a direct course, and moving right or left upon a roadway; and then directs that "no person shall so turn" without an appropriate signal.  The word "so" is defined as follows: "In the way or manner described, indicated, or suggested; in that style or fashion . . . .  Representing a word or phrase already employed: Of that nature or description; of or in that condition, etc."  OXFORD ENGLISH DICTIONARY, http://www.oed.com/ (enter "so" in "Quick Search" field).  From this definition follows a conclusion that "shall so turn" means "shall turn in the manner just described," which would encompass all four maneuvers listed.  Moreover, were the Court to conclude that the 100-foot signal requirement before a right or left "turn" does not include lane changes, the statute would be read as never requiring a signal before

changing lanes.[2]  Rather, the only requirement for lane changes would be that they be done "with reasonable safety."  Such a result would be illogical, given the safety risks of failing to signal when other traffic is on the roadway, as expressed in the Motor Vehicle Division's driver's guide.  Finally, as a lane change does require slight turning of the wheel, it is logical that "shall so turn" includes "mov[ing] left or right upon a roadway."  Therefore, under the circumstances leading up to Officer Valdez's traffic stop of Defendant, Defendant was required to engage his turn signal with reasonable safety, and if other traffic may have been affected by his lane change, he was required to signal at least 100 feet prior to changing lanes.

### B.    Other Affected Traffic

The turn signal statute requires a continuous signal for 100 feet prior to maneuvering the vehicle "in the event any other traffic may be affected by such movement."  N.M. STAT. ANN. § 66-7-325.  The New Mexico courts have offered some guidance for interpreting this portion of the statute.  In *State v. Anaya*, 176 P.3d 1163, 1164 (N.M. Ct. App. 2007), an officer observed the defendant fail to signal before turning right at a green light.  The officer pulled over the defendant for his failure to signal, and arrested him for driving while intoxicated.  *Id*.  The defendant moved to suppress, arguing that the stop was not supported by reasonable suspicion.  *Id*.  At a hearing on the motion, the officer testified as to his mistaken belief that Section 66-7-325 required use of a turn signal in all circumstances.  *Id*.  He then admitted that "he had since learned that the failure to signal is not a per se infraction and is not a violation, unless that failure

---

[2] At the evidentiary hearing, defense counsel referred to a "separate motor vehicle statute that deals with changing lanes."  3/17/11 Evid. Hr'g Tr. at 13.  As Defendant has not put forth evidence of such a statute (aside from one that pertains only to required lane changes to avoid emergency vehicles whose emergency equipment is engaged), the Court cannot conclude that this supposed New Mexico lane change law suggests that § 66-7-325 intentionally excludes lane changes from its definition of "turns."

could have affected traffic." *Id*. He further stated that no other cars were present and that his own vehicle was not "affected" by the defendant's turn. *Id*. The New Mexico Court of Appeals held that the officer had no reasonable suspicion that the defendant had committed a traffic violation because, based on the officer's testimony, his vehicle was not "traffic that could be affected" by the defendant's failure to signal. *Id*. at 1168. Accordingly, the stop was unreasonable.

In *State v. Hubble*, 206 P.3d 579 (N.M. 2009), the New Mexico Supreme Court further examined the portion of the statute regarding "other traffic that may be affected." There, the defendant arrived at a T-intersection where only his vehicle and a police officer's vehicle were in the vicinity. *Id*. at 582. The officer, Deputy Francisco, passed through the intersection and observed that the defendant did not have his turn signal engaged. *Id*. He continued to observe the defendant's vehicle through his rearview mirror, and then saw him turn at the T-intersection (away from the officer) without signaling. *Id*. Deputy Francisco turned around his vehicle and pulled over the defendant, which led to his arrest for drunk driving. *Id*.

In *Hubble*, the New Mexico Supreme Court ultimately concluded that the deputy himself was "other traffic [that] may be affected" within the meaning of the Section 66-7-325(A), even though he had already passed through the intersection. *Id*. at 583-84. In so concluding, the court looked to the Motor Vehicle Division's driver's manual to interpret the "may be affected" language. *Id*. at 584. The court repeated the manual's instructions: "Generally other drivers expect you to keep doing what you are doing. You must warn them when you are going to change direction or slow down. This will give them time to react if needed, or at least not be surprised by what you do." *Id*. In conclusion, the court stated:

11

> . . . Section 66-7-325(A) requires a motorist to give the appropriate signal when there
> is a reasonable possibility that other traffic may be affected by a turn . . . . The broad
> reach and underlying policy of Section 66-7-325(A) dictate that the effect that one
> driver's movement may have on another driver is not confined to the point in time
> when the actual, physical movement occurs . . . . The statute only requires that the
> surrounding facts establish that there was a reasonable possibility that he may have
> been affected.

*Id.* at 584-85.  The New Mexico Supreme Court distinguished *Anaya*, noting that there, the

officer "testified that he did not observe any other cars in the area at the time of the stop" and he

"did not testify that he was affected by the defendant's right turn."  *Id.* at 586.

## II.    Analysis

The New Mexico Supreme Court's conclusion in *Hubble* – that the officer's vehicle may

have been affected notwithstanding the fact that the defendant had turned in a direction opposite

the officer – demonstrates that the concept of traffic that "may be affected" must be construed

broadly.  The circumstances of this case distinctly illustrate the challenges posed by the inquiry

required under *Hubble* and *Anaya*.  By definition, the statute and the New Mexico Supreme

Court's interpretation of it – whether or not "the surrounding facts establish that there was a

reasonable possibility that [other traffic] may have been affected" – demand a speculative

inquiry.  In this particular case, the only evidence the Court has on which to base its

determination is the testimony of Officer Valdez.  His testimony is rife with inconsistency and it

is difficult to make sense of portions of it.  As set forth below, the Court is unable to discern

whether or not Officer Valdez had an objectively reasonable suspicion that any of the traffic in

the vicinity "may have been affected" by either of Defendant's lane changes.  Accordingly, the

Government has failed to meet its burden of establishing that the traffic stop was reasonable.

Two factual circumstances complicate the Court's reading of Officer Valdez's testimony.

First, the Court is not left with a clear picture as to whether the officer cited Defendant for one

sole or two separate lane changes.  The citation itself simply states: "Failure to signal properly.

Lane change signal/simultaneously."  Doc. 103, Ex. 2.  This does not indicate whether the officer

cited Defendant only for the second lane change, or for the first lane change as well.  The

supplemental arrest report simply states that Defendant "failed to signal properly [66-7-325 B]."

*Id*., Ex. 3.  Nor is the transcript of the traffic stop conclusive: "You know you did it in front of

me, and then *I think* you did it behind me also[.]" *Id*., Ex. 4 at 2 (emphasis added).  The officer's

testimony as to Defendant's first lane change – from the right lane to the left lane when the

officer pulled over to the shoulder to assist the water truck – was unclear.  Whereas he

emphasized that "it appeared" to him that Defendant committed the violation twice, he seemed

to concede that his decision to pull over Defendant was for the second perceived violation.  *See*

3/17/11 Evid. Hr'g Tr. at 32 ("Q: The ticket that you gave him was not based on what he did

behind you, but on coming back around you when he was in front of you, isn't that correct? . . .

A: I – yes, I testified at trial that what happened was, once he did it in front of me, then I pulled

him over there, allowed him to pass me and then he did it again.").[3]

    Second, the officer strongly appears to believe that a signal is *always* required 100 feet

prior to a lane change.  For example, Officer Valdez characterized the law as follows:

"According to 66-7-325(B), you have to signal continuously 100 feet before you change lanes."

*Id*. at 7.  Later, on cross-examination, he stated that his citation of Defendant was proper under

Section 66-7-325(B) because "it says, you shall signal 100 feet before changing lanes."  *Id*. at 13.

_____

[3] Officer Valdez's characterization of his trial testimony is accurate.  There, he stated: "It
appeared that he had committed the same violation he committed in front of me from behind, but
I did not pull him over when he . . . went around me and then went in front of me.  Then when he
got in front of me, he committed the violation that I had suspected he had done behind me, he
did it again."  11/15/10 Trial Tr. at 51.

Shortly thereafter, defense counsel asked whether the failure to signal for 100 feet before changing lanes "actually was an infraction, a traffic infraction falling under this section?" *Id*. at 15.  Officer Valdez replied, "66-7-325(B), yes, ma'am." *Id*.  Therefore, like the officer in *Anaya*, Officer Valdez mistakenly believed – both at the time of the traffic stop and at the evidentiary hearing – that the statute required 100 feet of signal under all circumstances.

Notwithstanding Officer Valdez's mistaken understanding of the law, the stop was nonetheless reasonable if the officer had an objectively reasonable suspicion that Defendant's failure to signal could have affected other traffic. *See Tibbets*, 396 F.3d at 1137 ("[T]he relevant inquiry . . . [is] whether [the officer] had reasonable suspicion of a violation, not whether there was actually a violation.").  This Court must accordingly determine whether or not the facts established at the evidentiary hearing would give rise to an officer's objectively reasonable suspicion that Defendant's failure to signal could have affected other traffic.  The Court notes that a "reasonable suspicion" is simply "some minimal level of objective justification" that a traffic violation occurred, and that "[e]vidence falling considerably short of a preponderance satisfies this standard." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009).

Early in his testimony, Officer Valdez stated that his vehicle, the semi truck behind Defendant, and the water truck on the shoulder "could have been affected" by Defendant's improper signal.  3/17/11 Evid. Hr'g Tr. at 7.  When asked to explain why he so concluded, the officer answered in general terms that suggested his conclusion was not based on the specific circumstances surrounding the traffic stop:

> [S]ignaling properly alerts other drivers of your intentions to change lanes.  Other drivers make that decision – their decisions based on what your signal is going to be.  If . . . you don't give your 100 feet of signal, the other drivers have no idea that you're actually intending on changing lanes.

14

*Id*. Later, specifically with respect to the first lane change, Officer Valdez again stated that the semi truck "could have been affected, based on his signal, depending on what [Defendant] was going to do." *Id*. at 11. However, the officer's subsequent explanation for his conclusion that the semi truck could have been affected suggests that he based his conclusion solely on the fact that Defendant failed to engage his turn signal 100 feet prior to changing lanes: "It could have been affected . . . just that it was an unsafe behavior, to change lanes without signaling properly, and giving the driver behind him or the traffic around him ample time[.]" *Id*. at 12-13.

During the hearing, the officer's testimony indicated to the Court that, given his mistaken belief that a turn signal was required 100 feet before changing lanes under all circumstances, he concluded that the semi truck could have been affected solely based on his belief that Defendant did not signal 100 feet prior to initiating his lane change. When Officer Valdez was diagraming the scene, the Court asked him to explain, to the extent that he remembered, where each vehicle was located the first time Defendant changed lanes. Whereas he did remember that both the semi truck and the water truck continued northbound past the location of the traffic stop, Officer Valdez was unable to estimate how much time elapsed before the vehicles passed the traffic stop. He was also unable to estimate the distance between Defendant's vehicle and the semi truck before Defendant's first lane change. He stated that the two vehicles were in each other's "vicinity," 3/17/11 Evid. Hr'g Tr. at 16, 20, & 22, but was unable to articulate the distance between them beyond "[t]hey weren't a mile apart or anything; it seemed like they were closer than that." *Id*. at 16.

Officer Valdez's vague testimony fails to satisfy the Government's burden of proving that the officer had an objectively reasonable suspicion that Defendant violated the turn signal law when he switched from the right lane to the left lane. The Court first observes that

15

Defendant moved from the lane in which the semi truck was driving to the other lane, rather than vice-versa; common sense dictates that such a change would be less likely to affect the driver of the semi truck than would a lane change *into* the lane in which the truck was driving.  Although Officer Valdez repeatedly stated in a conclusory fashion that the semi truck could have been affected by Defendant's lane change, an officer's conclusion that a law has been violated, without a showing of specific facts that support such a conclusion, should be accorded little weight.  *See Herrera*, 444 F.3d at 1242 (requiring officer to set forth "articulable reasonable suspicion" supporting traffic stop); *see also Batalova v. Ashcroft*, 355 F.3d 1246, 1255 n.11 (10th Cir. 2004) (refusing to credit vague and conclusory testimony).  Here, Officer Valdez was able to say no more than "it seemed like" the semi truck was closer than one mile away from Defendant's vehicle.  Even considering the posted speed limit of seventy-five miles per hour, a distance just under one mile – or even one-half mile – between vehicles fails to establish a reasonable suspicion that the semi truck may have been affected by Defendant's lane change.

With respect to the water truck, upon concluding his drawing, the officer stated, "The water truck stayed on the shoulder . . . .  The [semi truck] was somewhere behind Mr. Burciaga's vehicle during this infraction.  And the traffic [that] could have been affected right here, . . . [was] the semi truck."  *Id*. at 20.  He confirmed that the water truck stayed on the shoulder and did not enter the highway.  Shortly thereafter, when counsel for the Government asked him "which traffic could have been affected," Officer Valdez answered, "the semi could have been affected."  *Id*. at 25.

It is clear from Officer Valdez's testimony that in his opinion, the water truck could *not* have been affected by Defendant's lane change.  Given the officer's testimony that the water truck was on the shoulder, moving so slowly that it appeared to be stopped, the Court agrees

with the officer's assessment.  The driver of a truck traveling on the shoulder at such a slow speed could not possibly be contemplating entering the right lane of a highway whose posted speed limit is seventy-five miles per hour.  Therefore, this truck could not reasonably have been affected by Defendant's lane change from the right to the left lane.

With respect to the second time Defendant changed lanes, Officer Valdez initially stated that his own police car could have been affected by Defendant's failure to signal continuously for 100 feet.  However, he clarified that his vehicle "could have been affected if it was a little closer . . . . [B]y not giving proper signal, I could have been affected if I was either going a little faster or if he was, in fact, a little closer[.]"  *Id*. at 26.  The Court asked, "But because those weren't the case?" to which the officer replied, "Then, no, but could have been affected if there was other – if he was closer or – just by not signaling, it is not a safe change."  *Id*. at 26-27.  He further testified that he was unsure where the semi truck was in relation to Defendant's car during the second lane change.

As with the first lane change, the Government has failed to establish that Officer Valdez had an objectively reasonable suspicion that Defendant violated the turn signal statute when he moved into the right lane in front of the officer's vehicle.  Whereas the officer initially stated in a conclusory fashion that his own vehicle could have been affected by Defendant's lane change, he subsequently explained that his vehicle could have been so affected only if he had been in a different position on the road.  He then attempted to show that he could have been affected because, "just by not signaling, it is not a safe change."

Neither of Officer Valdez's alternative theories is sufficient to establish the requisite reasonable suspicion.  The New Mexico Supreme Court's language – requiring "a reasonable possibility that [other traffic] may have been affected," *Hubble*, 206 P.3d at 585 – cannot be

17

construed to mean that a violation occurs when, if the vehicles on the road at the time of the lane change were indeed in different positions on the roadway, they could have been affected.  Such an interpretation would mean that no matter where the other vehicles are on the road, one must always signal 100 feet in advance of changing lanes.  Nor does Officer Valdez's fallback position – that a lane change without signaling is per se unsafe – pass muster.  The New Mexico Court of Appeals has held that precise interpretation is a mistake of New Mexico law, a principle that neither party here disputes.  *See Anaya*, 176 P.3d at 1168 ("Failure to signal is not a per se traffic violation, despite this officer's good-faith understanding to the contrary.").

### III.     Alternative Grounds to Support the Traffic Stop

At the evidentiary hearing, the Government argued that, were the Court to find that Officer Valdez did not have an objectively reasonable suspicion at the time of the traffic stop that Defendant had violated Section 66-7-325(B), such a finding would not end the inquiry.  The Government first advanced a factual argument that regardless of whether or not lane changes are "turns" within the meaning of the statute, subsection (A) certainly requires that any maneuver on the road be made "with reasonable safety," which Defendant's lane changes were not.  The Government next advanced a legal argument, citing the New Mexico Court of Appeals' decision in *Anaya* for the proposition that "[i]f the officer's observations provided reasonable grounds to believe that another statute was being violated, or that the vehicle constituted a safety hazard, the stop was valid, regardless of his incorrect understanding of the law."  *Anaya*, 176 P.3d at 1167 (citation and alteration omitted).

Neither of the alternative bases advanced by the Government satisfies its burden to prove that the traffic stop was reasonable.  With respect to the Government's factual argument, the Court agrees that were the Government to have demonstrated that Defendant did not exercise

reasonable safety in changing lanes, Officer Valdez's traffic stop would have been valid. However, the evidence presented at the hearing established that Defendant was traveling northbound on Interstate 25 sometime during the 5:00 a.m. hour, when traffic was light.  He moved from the right to the left lane upon seeing the officer's vehicle engage its emergency equipment on the shoulder.  While the Court will not speculate as to why Defendant chose to change lanes at that moment, it must observe that his failure to do so would have violated another provision of the New Mexico Statutes, which requires a driver, "upon approaching a stationary authorized emergency vehicle displaying flashing emergency lights, [to] . . . drive in a lane not adjacent to where the authorized emergency vehicle is stopped[.]"  N.M. STAT. ANN. § 66-7-332(B).  Although "it appeared" to Officer Valdez that Defendant failed to engage his turn signal 100 feet prior to initiating the lane change, he did signal prior to or simultaneously with changing lanes.  Moreover, the only vehicle in Defendant's vicinity – at an unknown distance behind him – was in the lane Defendant was exiting, rather than the lane he entered.  In other words, there can be no argument that Defendant merged *in front of* another vehicle without first advising the driver of his intention to do so.  These facts as established by Officer Valdez's testimony fail to show that Defendant did not exercise reasonable safety in changing lanes.

The Government's legal argument also fails.  *Anaya* is a New Mexico Court of Appeals case, and it is not binding on this Court.  *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240 (10th Cir. 2003) ("decisions of a state's intermediate appellate courts . . . are not binding precedent under state law").  Particularly given the fact that the portion of the state court's opinion advanced by the Government concerns that court's interpretation of the Fourth Amendment and its New Mexico counterpart, its holding does not bind this Court.  *See Anaya*, 176 P.3d at 1165 ("Article II, Section 10, of the New Mexico Constitution and the Fourth

19

Amendment to the United States Constitution control the validity of investigative stops.").

In *Anaya*, the Court of Appeals cited its own precedent for the proposition that "despite a police officer's mistake of law, an objectively reasonable basis for a traffic stop may justify the stop on grounds other than those indicated by the officer." *Id*. at 1167 (citing *State v. Munoz*, 965 P.2d 349, 352 (N.M. Ct. App. 1998)). In *Munoz*, the Court of Appeals held that, because "[t]he subjective belief of the officer does not in itself affect the validity of the stop . . . [i]f his observations provided reasonable grounds to believe that another statute was being violated, or that the vehicle constituted a safety hazard, the stop was valid, regardless of his incorrect understanding of the law." 965 P.2d at 352. Similarly, in *State v. Brennan*, 970 P.2d 161, 164 (N.M. Ct. App. 1998), also cited by the *Anaya* court, the Court of Appeals focused on whether, notwithstanding the officer's mistake of law, "there were facts available to [the officer] that would warrant a person of reasonable caution to believe the stop was appropriate." These cases appear to permit the prosecution in a mistake-of-law case to advance a *post hoc* justification for a traffic stop on grounds the officer himself did not rely upon. Still, the New Mexico Court of Appeals observed in *Anaya* that "[i]t cannot be objectively reasonable to stop a vehicle when there are no facts to support the inference that a law has been violated." 176 P.3d at 1168. As explained above, the Government has not advanced facts to support the inference that Defendant was violating a traffic law when Officer Valdez conducted the traffic stop.

Moreover, the Court is not convinced that the New Mexico Court of Appeals' extension of the concept of reasonableness – which is rooted in the state and federal constitutions – comports with the Tenth Circuit's interpretation of the Fourth Amendment. The Government has not advanced, and the Court is unable to find, a mistake-of-law case where the Tenth Circuit upheld the search on grounds that the circumstances surrounding the stop, in hindsight,

20

established reasonable suspicion on some other basis.  The Tenth Circuit has repeatedly held that the reasonableness of a stop depends on whether the officer conducting the stop had a reasonable *articulable* suspicion of a traffic violation.  *See*, *e.g.*, *Tibbetts*, 396 F.3d at 1137 ("Under the Fourth Amendment, the district court must determine whether Chugg had a reasonable articulable suspicion of a violation of Utah[] law in light of the facts as Chugg observed them."). In order to possess an "articulable" suspicion, the officer himself must be able to articulate the suspicious facts.  Although the officer's subjective intent is irrelevant in the sense that he may subjectively have impermissible motives for selecting any given traffic violator, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006), the inquiry consistently focuses on whether the facts as expressed by the officer would support any given officer's reasonable suspicion.  The Court declines to adopt the *post hoc* approach advanced by the Government, which would allow an officer who has failed to learn the law he is charged with enforcing, to nonetheless justify a traffic stop in hindsight based on facts which, standing alone, would not have led him to conduct the stop.  Such an approach runs contrary to the deterrent purpose of the exclusionary rule, and would undermine the rule's incentive for officers to learn the law they are responsible for enforcing.

**CONCLUSION**

The Court concludes that the Government failed to meet its burden of demonstrating that Officer Valdez's traffic stop was based on an objectively reasonable suspicion that Defendant violated a traffic law.  Accordingly, the drug evidence uncovered in Defendant's vehicle must be suppressed.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Fruits of Stop Without Objectively Reasonable Suspicion [Doc. 93] is **GRANTED**.

Dated this 2nd day of May, 2011.

 

**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorneys for Plaintiff:*
Jon Stanford
Paige Messec

*Attorney for Defendant:*
D. Penni Adrian

22