IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                            No. 08 CR 1541 MV

FRANCISCO BURCIAGA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the following three motions filed by the Government: (1) Motion in Limine to Admit Defendant's Custodial Statement as Impeachment if Defendant Testifies at Trial (Doc. 105); (2) Motion in Limine to Exclude Evidence or Commentary Regarding the Propriety of the Forfeiture of Defendant's Vehicle (Doc. 107); and Motion in Limine; and (3) Motion in Limine to Admit Portions of Defendant's Prior Trial Testimony (Doc. 156).  The Court held a hearing on the motions on March 28, 2013.  The Court has considered the motions, briefs, the parties' arguments, and the relevant law, and being otherwise fully informed, **FINDS** as follows: (1) the motion concerning Defendant's custodial statement shall be **GRANTED**; (2) the motion concerning commentary regarding the forfeiture of the vehicle shall be **DENIED**; and (3) the motion concerning prior trial testimony shall be **GRANTED**.  All rulings shall be subject to the limitations and specifications set forth herein.

### DISCUSSION

The Court recounts only the most basic facts of this case, as both parties are familiar with this case's history.  As additional facts are necessary to resolve each individual motion, the Court will discuss those facts below.

1

On June 24, 2008, Defendant was pulled over while driving on Interstate 25 near Raton, New Mexico. A consensual search revealed a hidden compartment in Defendant's vehicle, wherein officers discovered 17.7 kilograms of heroin. Defendant proceeded to trial on November 15, 2010, but that trial ended in a mistrial. At the first trial, Defendant testified that he had no knowledge of the heroin's presence. The parties have represented to the Court that Defendant's knowledge – or lack thereof – of the heroin is the primary issue to be resolved at trial.

## I.  Defendant's Custodial Statement

### A.  Facts

Following his arrest, Defendant was transported to the DEA headquarters in Albuquerque. Special Agent Jeffrey Mauldin read Defendant his *Miranda* warnings, and Defendant unequivocally stated that he did not want to talk. SA Mauldin nonetheless attempted to persuade Defendant to debrief:

> SA Mauldin: In the federal system, there is bond, technically, but hardly anybody ever gets bond –
>
> Defendant: Uh huh.
>
> SA Mauldin: With this amount of dope, it's not my job to say that you're a danger to society. It's your job to say that you're not. You have to prove that you're not before you're going to get out. Okay? And I don't know what the minimum is on twenty-four pounds of heroin – something like that? Is that right?
>
> Defendant: Something like that.
>
> SA Mauldin: But it's something like twenty years. And in the federal system, whatever the judge says – and I'm not going to tell you it's twenty years, 'cause you may get ten, you may get five, you may get thirty or forty, I don't know. Okay?

Doc. 105 at 2. Following this exchange, SA Mauldin terminated the interview when Defendant again declined to talk. The Government now moves for an order permitting it to introduce – as

2

impeachment evidence should Defendant testify – the portions of the above-quoted exchange that do not reference Defendant's potential punishment.

### B. Applicable Law

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The Court later held that a statement obtained in violation of *Miranda*, though inadmissible in the prosecution's case in chief, is nonetheless admissible for impeachment purposes to attack the credibility of the defendant's trial testimony, so long as the statement otherwise satisfies legal standards of trustworthiness. *Harris v. New York*, 401 U.S. 222, 224-26 (1971). The Supreme Court affirmed this holding in *Oregon v. Hass*, 420 U.S. 714 (1975), but cautioned that a case in which "the officer's conduct amounts to an abuse . . . may be taken care of when it arises measured by the traditional standards for evaluating voluntariness and trustworthiness." *Id*. at 723.

### C. Analysis

In anticipation of Defendant testifying at trial that he was unaware of the presence of the heroin, the Government moves to introduce portions of the exchange excerpted above. It argues that Defendant's response "something like that" demonstrates that he in fact had knowledge regarding the weight of the heroin. Accordingly, argues the Government, this statement is admissible for impeachment purposes, if Defendant indeed testifies that he had no knowledge of the heroin's presence.

Defendant responds that the statement does not fall within the impeachment exception to the rule prohibiting the admission of statements obtained in violation of *Miranda*. Defendant

contends that the statement "something like that" is not actually inconsistent with his defense, and therefore is not impeachment evidence. Defendant reasons that at the time of his arrest, he was seated in the back seat of a police car, and he was able to observe officers remove twenty-four packages of heroin from the vehicle. His response of "something like that" was simply an acknowledgment of what he had seen first-hand, earlier the same day. The statement does not indicate knowledge, particularly in light of the fact that the packages of heroin did *not* weigh "something like" twenty-four pounds, but instead had a substantially higher weight of thirty-nine pounds. Defendant goes on to argue that the statement is weak even as an acknowledgment of what he had witnessed, as under the circumstances, he was simply parroting the agent's words in an effort to terminate the interview.

Defendant's arguments are persuasive, but they are for the jury to resolve. Under *Harris* and *Hass*, the Government need not show that Defendant's prior statement was in direct conflict with his testimony in order to meet *Miranda's* impeachment exception. The Government need only show that the two statements are inconsistent. *See Hass*, 420 U.S. at 722 ("the shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously . . ."). The question of whether or not the statements are inconsistent is a factual one, properly resolved by the jury. *See United States v. Nieto*, 60 F.3d 1464, 1469 (10th Cir. 1995) (describing jury's responsibility "fairly to resolve conflicts in the testimony [and] to weigh the evidence") (citation omitted). Defendant has cited no authority to support his contention that the court should make this determination prior to trial.

Defendant has not identified a preliminary test that the Court must apply to determine whether or not his statement qualifies as impeachment evidence. Accordingly, the Court looks to the Rules of Evidence, as it is these rules that govern the scope and admissibility of impeachment

evidence. The Rules of Evidence provide that relevant evidence is generally admissible. FED. R. EVID. 402. Relevant evidence is defined as evidence having "any tendency" to make a fact "of consequence" to the case "more or less probable than it would be without the evidence." FED. R. EVID. 401. But these rules are not absolute; Rule 403 vests the Court with authority to exclude relevant evidence if its probative value is "substantially outweighed" by a danger of unfair prejudice. FED. R. EVID. 403.

The Court concludes that under these liberal standards favoring admissibility, Defendant's custodial statement is relevant, and it is admissible under Rule 403. Defendant is incorrect in his argument that his statement in no way indicates he had knowledge of the heroin. While his explanation is plausible, so is the Government's. In this sense, the statement "something like that" certainly bears relevance on the question of his credibility. Nor is the evidence excludable under Rule 403: if the jury believes the statement amounts to an admission of knowledge, such a belief does not constitute *unfair* prejudice. "'Unfair prejudice' speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on an improper basis rather than on proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Given this definition of "unfair," there would be nothing unfair about the jury making this conclusion. While it is true that in any case, the jury could ignore a limiting instruction requiring it to consider evidence only for impeachment purposes, the Court must "presume jurors will remain true to their oath and conscientiously follow the [] court's instructions." *United States v. Carter*, 973 F.2d 1509, 1513 (10th Cir. 1992). Although admission of the statement might bode poorly on Defendant's case, it does not fall within the ambit of Rule 403, which provides an "extraordinary" remedy in cases where probative value is

*substantially* outweighed by the danger of unfair prejudice. *United States v. Tan,* 254 F.3d 1204, 1211 (10th Cir. 2001); FED. R. EVID. 403.

A final point that the parties did not discuss in detail is which precise portions of the exchange between Defendant and Agent Mauldin should be admitted. The Government proposes as follows:

> To establish the context of the statement, SA Mauldin would testify that he was speaking to Mr. Burciaga after his arrest and mentioned to Mr. Burciaga that they had found "twenty-four pounds of heroin – something like that" and that he then asked Mr. Burciaga, "Is that right?" SA Mauldin would testify that Mr. Burciaga replied "Something like that."

Doc. 105 at 3. According to the Government, this method of introduction will avoid the problem of presenting evidence of Defendant's post-arrest silence, as well as evidence of potential punishment.

The Court appreciates the Government's caution concerning evidence of Defendant's post-arrest silence. It certainly would be improper for SA Mauldin to testify that this exchange occurred after Defendant had invoked his *Miranda* rights, or just prior to his final refusal to talk to the agent. Nonetheless, were SA Mauldin to testify that he and Defendant were simply "talking" after Defendant's arrest, such a statement would present the jury with an inaccurate picture of the context and tone of the exchange. The crux of Defendant's argument is that the environment was inherently coercive – though not unduly so – which led him to parrot back whatever the agent said in hopes of terminating the interrogation. Without placing the exchange in the appropriate context, its admission presents substantial danger that the jury will misunderstand its import. If the jury is to believe that Defendant said "something like that" during casual conversation, the jury would likely improperly credit the Government's explanation of the statement over Defendant's.

6

Still, while a more complete recitation of the exchange would allow the jury to weigh each side's argument as to the import of Defendant's statement, it would also raise a separate problem. The topic of the exchange was bond. In essence, the agent was warning Defendant that he would not make bond due to the quantity of heroin found in his vehicle. Therefore, introduction of this portion of the exchange would inform the jury that Defendant was incarcerated following his arrest, and would lead many to assume that he remains incarcerated today. As the Court has a duty to "carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt," *Estelle v. Williams*, 425 U.S. 501, 503 (1976), it will not allow the introduction of evidence of Defendant's custodial status, as such evidence could "impair[] the presumption [of innocence]." *Id*. at 504.

The Court concludes that the statement "something like that" is admissible, subject to the parties reaching an appropriate stipulation as to the precise scope of the evidence to be admitted, as well as the manner in which it shall be presented, that responds to the Court's concerns addressed herein. The parties shall submit their proposed stipulation no later than April 8, 2013.

**II.     Forfeiture and Subsequent Disposal of the Vehicle**

    **A.     Facts**

Following Defendant's arrest, his Acura was seized and towed to the New Mexico State Police (NMSP) station in Raton. Two days later, NMSP transferred it to United States Marshals Service (USMS) custody.

On July 17, 2008, the Magistrate Judge issued a discovery order that closely tracks Federal Rule of Criminal Procedure 16. It requires the Government to "permit the defendant to inspect . . . tangible objects . . . which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended

7

for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant." Doc. 14 at 2-3.  The order also states that Defendant is deemed to request discovery, triggering the provisions of Rule 16(a)(1).  *See* FED. R. CRIM. P. 16(a)(1)(E) (requiring government to permit defendant to inspect, *inter alia*, "tangible objects . . . which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.").

On July 24, 2008, the DEA mailed Defendant and counsel at the time a "Notice of Seizure" explaining that the DEA had seized his vehicle pursuant to 21 U.S.C. § 881 and that forfeiture proceedings were underway. The Notice informed Defendant that he could petition the DEA for a return of his property and/or contest the seizure and forfeiture in court, and that his failure to do so would result in the termination of his interest in the vehicle.  The Notice does not address the *disposal* of the vehicle prior to trial.

Defendant did not contest the forfeiture.  The vehicle was forfeited in October of 2008 and sold in November of the same year.  At the first trial, Defendant testified that he had not followed the forfeiture notice's instructions on how to launch such a challenge because he felt confused by the process and he believed his attorney could not help him with such a proceeding. Defendant called an expert witness, former ATF agent Gary Ainsworth, who opined that the forfeiture was improper, given the fact that criminal proceedings had not concluded.  He stated that, were the car still available, he would have investigated it for possible exculpatory evidence. Specifically, he would have examined the hidden compartment for fingerprints or other evidence, and to determine the age of the compartment, as Defendant had only recently purchased the vehicle.  The Government now moves for an order preventing such testimony at the retrial.

8

### B. Relevant Law and Authorities

All property used to transport controlled substances is subject to forfeiture by the United States. 21 U.S.C. § 881(a)(4). When property is seized by a state law enforcement agency and transferred to federal custody, the Government must send written notice within 90 days of the seizure before it may initiate forfeiture proceedings. 18 U.S.C. § 983(a)(1)(A)(iv). The written notice must give the individual claiming an interest in the property at least 35 days to contest the forfeiture. Federal regulations in effect at the time of the seizure of Defendant's vehicle stated that if the owner of the property did not contest the forfeiture within 30 days of the notice of seizure, the property would "either be placed in official service or sold as soon as it is forfeited." 21 C.F.R. § 1316.80(a) (2008). Notwithstanding these procedures set forth by statute and federal regulation, internal United States Marshals Service directives provide:

> **Personal property held as evidence:** When personal property subject to forfeiture is also evidence in a criminal case, the agency conducting the criminal investigation must retain the property as evidence, and will not turn the property over to the USMO. Although the forfeiture proceeding may continue, the property will not be turned over to the USMO until its need as evidence has ended.

Doc. 107 at 4 (quoting USMS Directives 13.2(D)(7)(c)).

### C. The Parties' Arguments

The Government argues that Mr. Ainsworth should not be permitted to testify as to his belief that that the DEA or the USMS acted improperly in disposing of Defendant's vehicle prior to the conclusion of his criminal case. The Government first argues that the proposed testimony is irrelevant in that it has no bearing on any of the elements of the charged offense. The Government next argues that whatever minimal relevance the evidence has is substantially outweighed by the danger of confusing the jury and wasting time by placing undue emphasis on a collateral issue. Introduction of the evidence will remove the jury's attention from their duty to

9

determine whether or not the Government has proven all elements of the crime beyond a reasonable doubt. In addition, it will require rebuttal witnesses, which will result in a match between various witnesses arguing over whether or not the authorities involved followed the law. Finally, the Government argues that the USMS directive to which Mr. Ainsworth referred at the first trial is simply an internal guidance document, and it is not binding. In contrast, the vehicle's forfeiture and ultimate disposal were entirely consistent with statutory and regulatory authority. Therefore, as the DEA and USMS in fact acted entirely properly in forfeiting and auctioning the vehicle, it would be unduly punitive to allow Defendant to introduce the testimony.

Defendant does not appear to dispute the fact that the DEA followed all statutory and regulatory authority governing notice of the forfeiture proceedings. Rather, he emphasizes the fact that the notice he received only informed him that he would lose his property interest in the vehicle. Nowhere did the notice inform him that the vehicle would be auctioned. He states that his failure to contest the forfeiture "does not equate to consent to the destruction of key evidence only three months after his arrest." Doc. 159 at 5. In response, the Government states that in contrast to the vehicle, Defendant *did* contest the Government's notice to destroy drug evidence. This makes it all the more reasonable that representatives of the USMS concluded that neither party had any further need for the vehicle, and as such, its "need as evidence ha[d] ended." *See* USMS Directives 13.2(D)(7)(c). Defendant responds that his contestation as to the drug evidence actually underscores his point: that he would have objected to a notice to *destroy* the vehicle, which is essentially what the Government did by auctioning it. He states: "Providing an individual with notice of forfeiture is not the same as providing a criminal defendant with notice of intent to destroy evidence [that] has been deemed requested pursuant to a court order." Doc. 159 at 6.

**D.     Analysis**

The Court must begin by determining whether or not the proposed testimony is relevant. Evidence is relevant so long as it has "any tendency" to make a fact "of consequence" to the case "more or less probable than it would be without the evidence." FED. R. EVID. 401.  Defendant's purpose in introducing the testimony is two-fold.  First, Mr. Ainsworth, the defense's investigator, would testify about the investigation he would have conducted had he had access to the vehicle's hidden compartment.  Because Defendant purchased the car shortly before his arrest, Mr. Ainsworth would have liked to examine the compartment to search for fingerprint evidence as well as evidence of the compartment's age.  Had Mr. Ainsworth determined that the compartment had been in place since significantly before Defendant purchased the vehicle, the defense could have argued that this supported its theory that Defendant had no knowledge of the presence of the heroin.  Second, the defense hopes to introduce Mr. Ainsworth's testimony regarding the propriety of the forfeiture for purposes of suggesting that the Government's investigation in this case was flawed or sloppy.

Mr. Ainsworth's testimony regarding the investigation he would have conducted is certainly relevant to the question of Defendant's guilt.  As the parties have represented, Defendant's knowledge of the heroin is the primary, if not the exclusive, issue to be resolved at trial.  Defendant is entitled to present his defense that an inspection of the compartment could have corroborated his claim that he had no knowledge of the heroin.  The fact that the Government deprived him of the ability to inspect the compartment in no way vitiates his right to present his defense.

The closer question presented by this motion is whether or not Mr. Ainsworth may opine that the disposal of the vehicle was improper.  While this is a more nuanced inquiry, the Court

11

believes that the Government's arguments on this topic are generally misplaced. As an expert witness, Mr. Ainsworth is permitted to testify as to his opinion about the propriety of the USMS's actions, so long as the defense can lay a foundation for his knowledge on the topic of law enforcement procedures governing the handling of evidence. The purpose of admitting this testimony would not be to punish the Government, but rather to allow Defendant to present his chosen defense. Defendant is entitled to do so unless the Government can establish that admission of the testimony would violate Rule 403.

The Government has not made this showing. It is true that in *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998), the Tenth Circuit held that generally, "the facts surrounding the government's investigation may become relevant" only when they would affect the reliability of a particular piece of evidence. The Tenth Circuit further held that the defendant – who was convicted of bombing the Murrah Federal Building in Oklahoma City, resulting in the deaths of 168 people – had failed to establish the proper nexus between the evidence he sought to introduce, and the quality of the government's investigation. *Id*. at 1191-92.

The Court would first note that it is a perversion of the Tenth Circuit's holding to say that a defense case going to the integrity of the Government's investigation would never be proper in a case where the Government has destroyed evidence. Additionally, *McVeigh* is distinguishable from this case. McVeigh was attempting to distract from his own guilt by introducing evidence he claimed pointed to the possible guilt of someone else. The court noted the "special problems" of allowing a defendant to present "alternative perpetrator" evidence, as it presented the danger of "speculative blaming" that "intensifies the grave risk of jury confusion, and [] invites the jury to render its findings based on emotion or prejudice." *McVeigh*, 153 F.3d at 1191. The individuals McVeigh sought to blame for the bombing were members of an anti-government

12

group which had hopes of engaging in domestic terrorist acts.  In light of the nature and circumstances of the offense at issue in *McVeigh*, such evidence would have been inflammatory.  Whereas the court in *McVeigh* would have reasonably been concerned about the jury acquitting because it believed others were to blame for the bombing, this concern is not present here.  In this case, Defendant proposes to introduce evidence that the Government sold his vehicle before he had the opportunity to inspect it.  Unlike in *McVeigh*, the danger of confusing the issues or misleading the jury is slight, and it does not *substantially outweigh* the probative value of the evidence.  Accordingly, the Court shall allow the testimony.

## III.     Defendant's Prior Testimony

At the hearing on March 28, 2013, the Court orally granted the Government's motion to admit Defendant's prior testimony.  However, this decision was subject to compliance with the rule of completeness.

The rule of completeness provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  FED. R. EVID. 106.  The purpose of this rule is for the opponent of the evidence to secure "a complete understanding of the total tenor and effect of the utterance." *United States v. Phillips*, 543 F.3d 1197, 1203 (10th Cir. 2008) (quoting *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 171 (1988)).  While the rule's purpose is not to allow Defendant to tell his more sympathetic version of the story, the portions the Government proposes to redact must in fact be admitted if they help to explain the testimony and place it in context.  *See United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010) ("In determining whether a disputed portion of a statement must be admitted under the rule of completeness, the trial court should consider

whether (1) it explains the admitted evidence, (2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) insures fair and impartial understanding of the evidence.") (quotations, citations and alterations omitted).  The Court will address those redactions at issue in turn, subject to a general order that all portions of the testimony referencing the jury, or otherwise demonstrating that Defendant had a prior trial, shall be redacted.

      The Government proposes to redact Defendant's testimony regarding the events leading up to the traffic stop, his description of the stop itself, and his testimony regarding his mental state just prior to the search.  *See id*. at 13:17-24:1 & 39:13-41:1.  With the exception of page 23, lines 6 through 7 (which neither party has requested that the Court admit), this testimony must be included pursuant to the rule of completeness.  The purpose of this portion of Defendant's testimony was to convey his mental state surrounding his decision to consent to a search of his car.  Throughout the testimony, he describes his general demeanor during his interaction with Officer Valdez.  He repeatedly states that he was not nervous because he had committed no crime.  He further explains that he was cold because he was wearing shorts and a t-shirt, which served as his explanation as to his apparent shiftiness.  Without introduction of these portions of the transcript, the jury will have an incomplete picture of Defendant's testimony concerning his mental state at the time of his arrest.  Accordingly, the Court will not allow the Government to redact these portions, as they ensure the jury's fair and impartial understanding of the testimony.  *See Lopez-Medina*, 596 F.3d at 735.

      The next proposed redaction concerns Defendant's suggestion that the dog handler and the other officers involved in the arrest acted improperly.  *See* Doc. 156-1 at 24:2-27-3.  In essence, Defendant hinted at his belief that the dog had not actually alerted to heroin in the rear of the vehicle, as well as his perception that the officers were unversed in the handling of drug

evidence. These speculations do not further explain the portions of the transcript the Government seeks to introduce, and as such, the Government shall be permitted to redact them. Similarly, the Court agrees with the Government's next proposed redaction, *see id*. at 29:4-30:25, as this portion of Defendant's testimony solely concerns the officers' actions and has no bearing on Defendant's mental state.

The Government next proposes to redact Defendant's testimony concerning the forfeiture of his vehicle. *See id*. at 32:3-33:15 & 41:5-45:24. It its motion, the Government notes that "Should the Court determine that Defendant will be permitted to put the forfeiture of the vehicle at issue again, then the United States might seek to offer portions of Defendant's testimony regarding the forfeiture process." Doc. 156 at 2 n.2. Defense counsel has also indicated that the Court's resolution of this question will affect his position on the redactions. As the Court has now denied the Government's motion concerning the forfeiture, the parties should be permitted to confer for purposes of reaching an agreement as to which portions of the testimony regarding the forfeiture should be presented to the jury. Should the parties determine they are unable to resolve issue, the Court will issue a supplemental ruling on this short portion of Defendant's prior testimony.[1] If any other aspect of the instant order affects the parties' positions on the proposed redactions, the Court requests that they file supplemental motions in limine no later than April 8, 2013. Finally, should both parties agree not to introduce any portion the Court has ordered admitted, they need only inform the Court of their stipulation.

---

[1] The Court would like to draw the parties' attention to the portion of the testimony wherein counsel for the Government as well as Defendant discussed the fact that Defendant had received the forfeiture notice while incarcerated at the Torrance County Detention Facility. *See* Doc. 156-1 at 43:7-44:21. The Court hopes that the parties will reach an agreement as to how to redact this portion of the transcript so as not to reveal Defendant's custodial status to the jury.

## CONCLUSION

It is **HEREBY ORDERED** that:

(1) The Government's Motion in Limine to Admit Defendant's Custodial Statement as Impeachment if Defendant Testifies at Trial (Doc. 105) is **GRANTED**. The parties are ordered to submit a proposed stipulation consistent with this order no later than April 8, 2013.

(2) The Government's Motion in Limine to Exclude Evidence or Commentary Regarding the Propriety of the Forfeiture of Defendant's Vehicle (Doc. 107) is **DENIED**.

(3) The Government's Motion in Limine to Admit Portions of Defendant's Prior Trial Testimony (Doc. 156) is **GRANTED** subject to the rulings on the Government's proposed redactions as set forth above.

Dated this 29th day of March, 2013.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorneys for Plaintiff:*
Jon Stanford
C. Paige Messec

*Attorney for Defendant:*
Ryan Villa