IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                            No. 08 CR 1541 MV

FRANCISCO BURCIAGA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss for Violation of Double Jeopardy (Doc. 177). The parties did not request a hearing on the motion. The Court has considered the motion, briefs, and the relevant law, and being otherwise fully informed, **FINDS** that the motion shall be **DENIED** for the reasons stated herein.

## BACKGROUND

Defendant is charged with Possession with Intent to Distribute 1000 grams and More of a Substance Containing a Detectable Amount of Heroin. Trial in this matter commenced on November 15, 2010. After the close of the Government's case, Defendant testified in his own defense. In an apparent effort to demonstrate Defendant's innocence to the jury, defense counsel at the time had the following exchange with her client:

> Q: [H]ave you ever been convicted of a crime?
> A: Yes.
> Q: Would you tell us what you've been convicted of?
> A: Possession of marijuana [in 1991] . . . [and] delivery [of marijuana in 1995].
> . . .
> Q: Okay. Did you go to trial on those cases?
> A: No ma'am.
> Q: What did you do?

1

       A: I pled.
       Q: And why did you plead?
       A: Because I was guilty.

Doc. 81 at 191:24-193:2.  Direct examination concluded as follows:

       Q: Have you ever considered accepting a plea and pleading guilty in this case?
       A: No.
       Q: Why is that?
       A: Because I'm not guilty.

*Id*. at 221:16-20.

On cross-examination, counsel for the Government asked Defendant about his contention that he had never considered pleading guilty in this case.  When Defendant affirmed this portion of his testimony, the prosecutor attempted to impeach him by asking, "Why is it your attorney came to me with a proposed plea in this case last spring?" Doc. 82 at 15:4-5.  The defense objected, and the Court excused the jury.

The defense did not immediately request a mistrial, but did request one before the conclusion of the proceedings.  When the jury was excused, the Court reprimanded the AUSA and warned him that he had "come awfully close to a mistrial."  *Id*. at 19:12-13.  The AUSA explained that defense counsel had sent him an email in which she said, "If you offered five years, he'd take it in a heartbeat."  *Id*. at 16:15-16.  He further explained: "I have a good faith basis for asking [the question] because I personally was a party to the conversation . . . .  I'm asking it because it's a credibility issue.  He lied yesterday.  He said he never wanted to take a plea."  *Id*. at 16:18-25

After a discussion with counsel, the Court called a recess so that it could research whether or not a mistrial was necessary.  The Court reviewed the relevant law, considered possible alternatives to declaring a mistrial, and heard arguments from the Government as well as Defendant about whether or not a mistrial was warranted.  The Court concluded that no

curative instruction could repair the error that the Government committed by asking this question of Defendant, and accordingly declared a mistrial.

Defendant now moves to dismiss the entire case against him, arguing that the Double Jeopardy Clause bars his retrial.  He argues that retrial is barred because the prosecutor's actions were calculated to provoke him into requesting a mistrial.

## APPLICABLE LAW

The Double Jeopardy Clause 'protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982).  When the trial court declares a mistrial absent the defendant's request and without his consent, a new trial can be held only if the mistrial was declared out of "manifest necessity." *United States v. Dinitz*, 424 U.S. 600, 606-07 (1976) (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824)).  However, "where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *Id.*  Under such circumstances, and as applicable here, the Double Jeopardy Clause bars retrial only when a prosecutor "goad[ed] the defendant into requesting mistrial."  *United States v. Tafoya*, 557 F.3d 1121, 1126 (10th Cir. 2009) (citation omitted). This is a strict standard: although the prosecution may not intentionally provoke the defendant into requesting a mistrial, retrial is not barred where the prosecution is merely "mistaken, careless, or even harassing." *Id.* (quoting *United States v. Valadez-Camarena*, 163 F.3d 1160, 1163 (10th Cir. 1998)).

In analyzing whether or not a prosecutor subjectively "acted with intent to subvert the protections afforded by the Double Jeopardy Clause," *Tafoya*, 557 F.3d at 1126 (quoting *Kennedy*, 456 U.S. at 675-76), the Court must make a factual determination based on objective

facts and circumstances.  *Id*.  A formal evidentiary hearing is not required so long as the Court

"is satisfied with both the prosecutor's explanation for his missteps and also by what [the Court]

witnessed in overseeing the trial."  *Id*. at 1128.

## DISCUSSION

To summarize Defendant's argument, he contends that the Court's own language in its

opinion setting forth the basis for its declaration of  mistrial, in addition to factual distinctions

between this case and *United States v. Tafoya*, 557 F.3d 1121 (10th Cir. 2009), demonstrate that

the Government's conduct at the first trial amounted to goading.  The Government responds that

the objective facts and circumstances conclusively demonstrate that it did not intend to provoke

Defendant to request a mistrial, and further highlights the lack of motive the prosecutor would

have had to cause a mistrial, as Defendant's testimony "strained credulity" and the Government

was "poised for a guilty verdict."  Doc. 185 at 7.

As Defendant's argument rests in large part on distinguishing his case from *Tafoya*, it is

necessary to briefly summarize the facts at issue in that case.  In *Tafoya*, a felon-in-possession

case, the district court issued an order limiting the evidence to that going directly to the charge at

issue.  *See generally* 557 F.3d at 1123-24.  The offense stemmed from an incident in which the

defendant allegedly assaulted people, and the district court found that introduction of such

evidence would be unduly prejudicial.  *Id*.  Despite the court's detailed order setting forth the

permissible scope of the Government's evidence, the AUSA asked the following open-ended

question during direct examination of a government witness: "What happened after that?"  *Id*. at

1124.  The witness, a law enforcement officer, responded: "[D]ispatch . . . advised us that . . .

they were battering some of the residents."  *Id*.  The defendant moved for a mistrial, which the

court granted, as the prosecutor had elicited the prejudicial information the court had ordered excluded.  *Id*.

Following the mistrial in *Tafoya*, the defendant moved to dismiss on double jeopardy grounds.  *Id*.  The district court held an informal hearing wherein it asked the prosecutor a series of questions about his trial preparation, the court's limiting order, and the prosecutor's intent in calling the law enforcement officer as a witness.  *Id*.  The prosecutor provided the following testimony: (1) he had prepared the witness, but the witness's testimony did not conform to what the prosecutor expected him to say; (2) in hindsight, he conceded that the question was "inartful;" and (3) although he had experience as a trial attorney in the state courts, this trial was his first as an AUSA.  *Id*. at 1125.  Ultimately the court concluded that the prosecutor's conduct, while perhaps negligent, did not amount to goading, and retrial was not barred.  *Id*.

Defendant argues that the distinctions between *Tafoya* and the instant case demonstrate that unlike in *Tafoya*, the AUSA in this case did intend to provoke Defendant into requesting a mistrial.  Defendant first notes that the AUSA was a seasoned prosecutor at the time and was neither new to the profession nor to federal court.  He then argues that a question like "what happened next" does not imply any inappropriate intent, whereas here, the AUSA asked a question that was in clear violation of the Federal Rules of Evidence and Criminal Procedure.  Whereas the court in *Tafoya* found that the prosecutor's rationale for his question was reasonable, this Court rejected the AUSA's contention that his question was made in good faith.[1]

Given these objective facts and circumstances, Defendant argues that the Government subjectively intended to goad him into requesting a mistrial. Defendant reasons:

---

[1] The Court notes that this is Defendant's characterization of its finding.  In fact, the Court found that  "a prosecutor's alleged good faith basis for any given action at trial does not resolve the ultimate question of whether the defendant's right to a fair trial has been violated."   Doc. 77 at 4.  Moreover, this finding was in the context of the Court's declaration of a mistrial, where the question of goading played no part in the Court's analysis.

> [S]ecuring a mistrial allowed the Government to obtain a tactical advantage and file multiple motions in limine seeking to exclude evidence and testimony presented in the first trial that went specifically to Mr. Burciaga's defense theory of lack of knowledge and to selectively use the transcripts of the last trial against him. Thus, in this way, the Government obtained the advantage of attempting to chip away at the evidence supporting Mr. Burciaga's defense that he did not knowingly and intentionally possess the heroin.

Doc. 177 at 6.

In response to Defendant's arguments, the Government contends that the objective facts and circumstances surrounding the prosecutor's question that triggered the mistrial demonstrate that his intent was simply to impeach Defendant.  After the Court excused the jury and before it declared a mistrial, the prosecutor explained his belief that such an objective was entirely proper, as the Government sincerely believed that Defendant was being untruthful.[2]  Moreover, this effort at impeachment was in furtherance of one of the prosecution's overarching goals in any criminal case: a conviction.  During the recess the prosecution worked diligently alongside the defense at crafting a limiting instruction so as to allow the case to proceed to the jury.  In fact, the prosecutor stated that the Government "would agree, I imagine, to almost any limiting instruction the defense wants to suggest here, or that the Court would suggest." *Id*. at 48.  He then attempted to persuade the Court to allow the case to proceed to the jury, which would permit the Court to later decide to grant a new trial if it found such a course would be appropriate.

In contrast to the mistrial stage of this case, the Court's present inquiry does not hinge on the propriety of the question, or whether the question violated Defendant's rights.  Rather, the Court must determine whether or not the question demonstrated that the prosecutor intended to goad Defendant into requesting a mistrial.  Therefore, whatever disagreement the Court had with

---

[2] In the various proceedings in the two-and-a-half years since the mistrial, the Government has submitted a number of briefs setting forth its basis for believing that Defendant was being untruthful.  *See*, *e.g.*, Doc. 88 at 2-7; Doc. 185 at 5.

the prosecutor regarding his asserted good-faith basis for asking the question is relevant only insofar as it bears on the issue of his subjective intent. Although the Court made clear that it was highly displeased with the AUSA's question and the manner in which he asked it, nowhere in the Court's order setting forth its decision to declare a mistrial did the Court suggest that it believed the question stemmed from a desire to cause a mistrial.

No part of the objective facts and circumstances surrounding the mistrial lead to a conclusion that the prosecutor caused it intentionally. As the Court explained in its order following the mistrial, it found the prosecutor's question to be highly improper. *See generally* Doc. 77. The Court did not believe that a curative instruction could repair the harm caused by the question, which "eliminated the only ground the jury would have had to find Mr. Burciaga not guilty." *Id.* at 9. Yet it is one thing to say that the Government acted unwisely and improperly, but it is something else entirely to say that the Government acted with the subjective intent to provoke Defendant into moving for a mistrial. The Court must disagree with Defendant's contentions that various portions of the trial transcript and subsequent filings by the Government evidence such an intent. None of these statements or filings on the part of the Government suggest that it even considered the possibility that a mistrial would be the consequence of its question. It was at least in part for this reason that the Court was so upset by the question – it revealed a negligent disregard for Defendant's rights, not a conscious effort to circumvent them. The Court believed the prosecutor was so wrapped up in securing his conviction that he lost sight of the unique role he occupies in the criminal process. *See, e.g.,* *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803 (1987) (United States Attorney serves as "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and

7

whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice

shall be done" (quoting *Berger v. United States,* 295 U.S. 78, 88 (1935))).

     Nor can the Court ignore the fact that when the AUSA asked the question of Defendant,

the case was certainly not going poorly for the Government. *Cf. Tafoya*, 557 F.3d at 1126

(noting defendant's argument that prosecutor goaded defendant into moving for mistrial because

two Government witnesses had trouble remembering events and prosecution lost a *Batson*

challenge during voir dire). The Government's case in chief had concluded, and the prosecutor

was finishing his cross-examination of the final defense witness. Even with a rebuttal case, the

case would have proceeded to the jury that morning. Not only was the Government's case itself

not weak, but Defendant's own testimony did little to rebut it. Indeed, in the motions in limine

stage of these second trial proceedings, the parties argued over whether or not the Government

would be permitted to introduce Defendant's previous trial testimony. *See* Docs. 156 & 158.

The Government's desire to introduce this testimony, and Defendant's strong wish to have it

excluded, indicate that the parties believe that Defendant's testimony ultimately would have been

favorable to the Government. These facts demonstrate that the prosecutor had an objectively

reasonable basis for believing that the jury would convict Defendant, leaving the Government

with no incentive to cause a mistrial. While the Court agrees with Defendant that "a [guilty] a

verdict is never certain," Doc. 187 at 7, this point actually underscores the Court's conclusion.

Were the Court to view the uncertainty of a guilty verdict as an objective fact indicating the

prosecutor's intent to provoke a mistrial, this objective fact would be present in every criminal

case. A prosecutor can never be entirely certain that the jury will vote to convict, but he can

surely be more confident in trials where he has an objective basis for believing that the

Government's case was strong and the defense case was weak.  Here, the objective facts and circumstances demonstrate that this was such a case.

In an effort to support his argument that the question the prosecutor asked was a calculated move to place the Government at a greater advantage during the second trial, Defendant highlights the actions the Government has taken since the last trial.  Specifically, he points out the numerous motions in limine the Government has filed in efforts to exclude the testimony that it saw as favorable to Defendant during the first trial.  The Court agrees that, had the prosecutor intentionally provoked the mistrial, he would have filed these motions.  However, the fact that he filed them does not demonstrate a subjective intent to cause the mistrial.  None of the arguments advanced in these motions was improper or frivolous.  The motions merely demonstrate that the Government – like any reasonable attorney preparing for a trial in our adversary system – has consulted the evidence it has available to it and endeavored to use this evidence to its advantage.

Finally, Defendant acknowledges that this Court is bound by the law as set forth in *Kennedy* and *Tafoya*, but he argues that the subjective intent standard is unworkable, and these cases should be overruled.  The Court agrees that it is bound by Supreme Court and Tenth Circuit authority and it need not analyze Defendant's argument to this point any further.

In short, the Court has not identified any objective facts or circumstances that would support Defendant's contention that the AUSA asked the question at issue with the intent to goad Defendant into requesting a mistrial.  The question was careless and involved poor judgment, but it did not amount to an effort to circumvent the protections of the Double Jeopardy Clause.

# CONCLUSION

It is **HEREBY ORDERED** that Defendant's Motion to Dismiss for Violation of Double Jeopardy (Doc. 177) is **DENIED**.


Dated this 24th day of April, 2013.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**


*Attorneys for Plaintiff:*
Jon K. Stanford
C. Paige Messec

*Attorney for Defendant:*
Ryan Villa